IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2015

**JACKIE EWING v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County
No. C-13-208     Donald H. Allen, Judge**

---

**No. W2014-00273-CCA-R3-PC  -  Filed March 24, 2015**

---

The petitioner, Jackie Ewing, was convicted of theft of property valued over $1000 and sentenced as a career offender to twelve years.  On direct appeal, this court affirmed the petitioner's conviction, and our supreme court denied permission to appeal.  State v. Jackie Ewing, No. W2012-00376-CCA-R3-CD, 2012 WL 6206123, at *1 (Tenn. Crim. App. Dec. 11, 2012), perm. app. denied (Tenn. Apr. 9, 2013).  Subsequently, he filed a *pro se* petition for post-conviction relief, alleging he received the ineffective assistance of counsel at trial.  Counsel was appointed and, following an evidentiary hearing, the post-conviction court denied the petition.  Based upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the Defendant-Appellant, Jackie Ewing.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS**

On direct appeal, this court set out the facts resulting in the petitioner's conviction:

This case arises from a theft of merchandise in a Sears store in Jackson, Tennessee. A Madison County grand jury indicted the [petitioner] for theft of property valued over $1,000.00. At the trial on these charges, the parties presented the following evidence: David Presson, a Sears Loss Prevention Manager, testified that he worked at the Sears store located in the Old Hickory Mall in Jackson, Tennessee.

Presson testified that, at around 9:30 p.m. on December 21, 2010, while he was on his way home, store management notified him that a "push-out theft" was in progress. Presson explained that a "push-out theft" is a theft where an individual places merchandise in a shopping cart and pushes the cart out of the store without paying for the items. Presson said that the two suspects were not confronted that night, but, after returning to the store that night, Presson took statements from various employees. The following day, December 22, 2010, Presson viewed surveillance video recordings. Sears maintained fifty-two surveillance video cameras throughout the store, which captured views from various angles and in various areas of the store. Presson was able to confirm that a "push-out theft" had occurred and contacted the Jackson Police Department. Presson isolated the relevant video segments which captured the two suspects entering the store, their progress throughout the store, and their exit from the store. Presson made copies of this video footage and provided it to police.

Presson testified that, by working with a store employee well-versed in the store stock and comparing the items placed in the shopping cart on the video footage with the remaining items in that area of the store, he was able to compile a list of the stolen items and the value of those items. Presson said that a store employee identified the female suspect, but he also said that he was not personally familiar with either suspect.

Charles Chatman, a Sears employee, testified that he worked in the tools department of the Sears store. On the night of December 21, 2010, Chatman said he observed a man and a woman in the tools department. He recognized the woman from Jackson State Community College where he attended school. He said that she was a tutor for a math lab class. He then identified the [petitioner] in court as the man he saw on the night of December 21, 2010. Chatman watched the couple push their cart full of items to the adjacent fitness department. When he did not see the couple

return to the register to pay for the items, he went to the fitness department and yelled out, "Did they pay for that?" The couple, however, had left at the "perfect time" because the other sales associate who was in the fitness department had his back to the exit. Chatman reported the incident to his manager.

Tiffany Baker, a Sears loss prevention associate, testified that, before working in loss prevention at Sears, she worked in merchandising and customer assistance. Baker said that, on December 22, 2010, she watched surveillance video footage from the previous night and compared items on the floor of the store with what she watched the shoplifters place in the shopping cart on the video recording. She then compiled a list of thirty-two items, all from the children's, men's, and tool departments, and the value of each item. The total amount of the items stolen was $2,416.19.

Baker testified that the department store did not recover any of the stolen items. Baker then named each item and the individual value of that item for the jury. The State played the video surveillance footage of the [petitioner's] progression through the department store on the night of December 21, 2010. The video showed the [petitioner] selecting various items from a rack or shelf while the co-defendant stayed with the shopping cart. It also showed the [petitioner] and co-defendant exiting the store with the unbagged items in the cart.

On cross-examination, Baker testified that all merchandise sold in the store is placed into a bag. If the item is too large, the bag is either stapled or tied to the product to indicate the item has been purchased. Baker said that the items inside the [petitioner's] shopping cart as he exited the store were not in store bags. Baker explained that the video surveillance camera did not record the [petitioner] taking items in the tool department but that, due to the location of one of the surveillance cameras, personnel zoomed in on a frame of the [petitioner's] shopping cart and Baker was able to see the nailer kit taken from the tool department.

Chekari Williamson, the co-defendant, testified that her charges related to these crimes were pending. Williamson recalled that she and the [petitioner] arrived at Sears at night on December 21, 2010. Williamson said that the [petitioner] offered to pay her $20.00 if she would drive the [petitioner] to Sears to buy gifts for his grandchildren. Williamson said that

3

she parked at the side entrance of Sears, and they both went inside the store. Williamson helped the [petitioner] pick clothes, and she placed them in a shopping cart. She estimated that they were inside Sears for approximately twenty to thirty minutes.

Williamson testified that she told the [petitioner] she would pull her car around to the door. She was on her cellular phone as she exited the store and, when she ended her call, she realized that the [petitioner] was directly behind her and that he had not stopped to pay for his items. She said that she used "a few choice words," and then told the [petitioner] that he was not getting in her car with "this stuff." The [petitioner] told Williamson to "stop tripping" and said, "come on, let's go." Williamson said that she drove away leaving the [petitioner] in the parking lot with the items. Williamson said that none of the items in the shopping cart were in bags.

Williamson identified herself and the [petitioner] in the video surveillance footage. Williamson said that she did not realize the items were being taken without payment until she and the [petitioner] were in the parking lot.

On cross-examination, Williamson testified that she is employed at Jackson State Community College.

Id. at *1-3.

At the December 17, 2013 evidentiary hearing, trial counsel testified that she represented the petitioner from the city court level through trial. She met with the petitioner several times to discuss strategy and said that his story about the theft changed numerous times. She received a copy of the store's videotape and reviewed it with the petitioner. The tape clearly showed the petitioner, and the petitioner told counsel that it was him on the tape, saying, "That's me, but I didn't take the items out of the store. I rolled them out and I left them there because [the co-defendant] would not let me put them in her car." However, during the trial, the petitioner told counsel that the man in the video was the co-defendant's boyfriend.

Trial counsel said that "[t]here wasn't much defense that [she] could formulate other than to try to show that the items perhaps were not over $1000." She recalled that a Sears employee testified at trial that the value of the stolen merchandise was $2488.57.

4

Counsel tried to convince the jury that that amount was an inflated figure. The petitioner wanted the co-defendant to testify even though she could identify him on the video because "she was supposed to help him out." Asked if there was anything she could have done differently that would have changed the outcome of the petitioner's case, counsel responded, "No. Not with the evidence that the State had against [the petitioner]."

The petitioner testified that he discussed his case with trial counsel several times. He said he told counsel "from day one" that the man in the video was the co-defendant's boyfriend. He claimed that trial counsel should have attacked the co-defendant's credibility because she had a prior shoplifting charge. He also claimed that counsel "didn't get [his] point across that the theft was under $500 the way she should have." The petitioner said that if counsel "had investigated all of the evidence that was brought before her in trial as far as the amount, . . . and she had objected to letting that be entered into evidence that wouldn't have ever been brought . . . to the point to where as the jury would have looked at it and seen that."

As to his direct appeal, the petitioner claimed that appellate counsel did not read the transcripts and, in preparing his brief, "just got something and threw it together." He said that appellate counsel did not present the facts from trial regarding the amount of the stolen merchandise to the appellate court.

Appellate counsel testified that he reviewed the trial transcripts and felt the only issue he could raise on appeal was sufficiency of the evidence. He said he did not address the value of the merchandise because it did not have any merit on appeal.

At the conclusion of the hearing, the post-conviction court took the matter under advisement and subsequently entered an order denying the petition and incorporating into the order the court's letter dated January 10, 2014, addressed to defense counsel and the State.

## ANALYSIS

The petitioner argues that trial counsel was ineffective because she did not emphasize the value of the merchandise to the jury and "should have used her skills of persuasion as a veteran lawyer to convince the jury that [the petitioner] was not in the store videos."

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary

hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687(1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he

6

or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

In the denying the petition, the post-conviction court concluded:

> The evidence in this case shows that petitioner's trial counsel was retained, beginning at the Jackson City Court preliminary hearing stage, that she had obtained full discovery from the State, and met with [the petitioner] several times prior to trial. [Trial counsel] reviewed the evidence, including the video surveillance evidence with her client in preparing for the trial. She testified that [the petitioner] admitted to her that he was in fact the male subject on the store's security video, and that the female that was with him was his co-defendant, Ms. Chekari Williamson.

> The primary evidence in the case against [the petitioner] consisted of video surveillance from the Sear[s] store and the testimony from the store's employees. Additionally, the co-defendant, Ms. Chekari Williamson, testified that [the petitioner] was the person that had exited the store with a shopping cart of merchandise that he had not paid for.

> The Court notes that the identification of the [petitioner] as the person who committed the crime is a question of fact for the trier of fact to determine. The jury, based upon the evidence presented at the trial, found beyond a reasonable doubt that the perpetrator of this theft was in fact the [petitioner]. This Court has reviewed the video evidence submitted to the jury in this case, and the Court finds that the jury's determination as to the identity of the [petitioner] as the perpetrator of this theft is correct and certainly sufficient to support the conviction. [Trial counsel] further testified that she did not believe that the Court would have suppressed the video tape evidence, since there was no legal basis to do so.

7

The petitioner testified that his attorney was ineffective at trial for various reasons. He denied that it was him in the video, and claims that he never told his attorney that [it] was him. The Court does not credit his testimony when he states that "it was not him" in the Sear[s] store video.

After a careful review of all the evidence in this case, the Court finds that none of trial counsel's actions or omissions were so serious as to fall below the objective standard of reasonableness under prevailing professional norms. The Court finds that [trial counsel's] representation was appropriate and that she provided [the petitioner] with reasonably effective assistance. The Court further finds that [the petitioner] has failed to show that there is a reasonable probability that, but for trial counsel's performance, the result of the trial proceeding would have been different.

We conclude that the record supports the post-conviction court's finding that trial counsel provided effective representation. Trial counsel testified that the petitioner admitted to her that he was in the man in the videotape of the theft but, later during the trial, told her that the man was actually his co-defendant's boyfriend. The co-defendant testified that the petitioner was the man in the video. Counsel recalled that a Sears employee testified that the value of the stolen merchandise was $2488.57, and she tried to convince the jury that that amount was an inflated figure. She said there was nothing she could have done differently to change the outcome of the petitioner's case based upon the evidence the State had against him.

In sum, the petitioner has failed to show that trial counsel was deficient in her representation. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of his claim of ineffective assistance of counsel.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE

8